UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEROLD THOMAS BRAYBOY,

               Petitioner,

v.                                  CASE NO. 07-11350
                                  HONORABLE ARTHUR J. TARNOW

DOUG VASBINDER,

               Respondent.

_____/

### OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
### BUT GRANTING A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

      Petitioner Jerold Thomas Brayboy has filed a habeas corpus petition, challenging his convictions for second-degree murder and felony firearm.  Having reviewed the pleadings and record and having conducted an evidentiary hearing on Petitioner's claims, the Court finds that Petitioner is not entitled to the relief he seeks.  Accordingly, the habeas petition is **DENIED**.

## I.  Background

### A.  The Facts, Plea, Sentence, and Appeals

      Petitioner was charged in Wayne County, Michigan with second-degree murder and felony firearm.  The charges arose from allegations that Petitioner shot and killed his girlfriend, Robin Lynn Ramage, in Inkster, Michigan on May 31, 1986.  The couple's neighbor testified at Petitioner's preliminary examination that, about 11:00 p.m. that day, Petitioner and Ms. Ramage came running around the side of their house.  Ms. Ramage called for help and said that Petitioner was going to shoot her.  Petitioner ran in front of Ms. Ramage and shot her in the stomach with a rifle.  After she fell down, Petitioner said, "I love her too much.  I love her.  I love her."  Then he

shot her a second time from about five feet away.  The neighbor warned Petitioner not to shoot, but Petitioner said, "Leave us alone.  We will always be together."  He then shot Ms. Ramage a third time.  He put the barrel of the gun next to his throat and pulled the trigger, but nothing happened.  He ran into the house, came back outside, picked up Ms. Ramage, and dragged her into the house.  He was arrested after the police were called.

The medical examiner testified at the preliminary examination that Ms. Ramage died of multiple gunshot wounds.  She sustained two gunshot wounds to the chest and one to her thumb. One of the gunshots to the chest was close-range, but there was no evidence of a struggle.

Petitioner's jury trial commenced in 1987.  The trial was either aborted or adjourned. Although the transcript of that proceeding is unavailable, there is some indication in the pleadings and record that the reason for the interrupted trial was that a defense witness did not have certain medical records, which he needed for his testimony.

Petitioner's trial attorney subsequently was suspended from the practice of law, and new counsel was appointed to represent Petitioner.  Three months later, on November 16, 1987, Petitioner pleaded no contest, as charged, to second-degree murder and felony firearm.  The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of thirteen to thirty years for the murder conviction.

Petitioner's first appellate attorney withdrew as counsel after concluding that there were no meritorious issues for appeal.  Second appellate counsel then raised the following seven claims in an application for leave to file a delayed appeal: (1) trial counsel was ineffective for failing to pursue an insanity defense; (2) the plea was illusory because Petitioner was promised a lenient sentence; (3) the plea was involuntary because Petitioner was incompetent; (4) trial

2

counsel was ineffective for failing to move to withdraw Petitioner's plea; (5) the plea was barred by the doctrine of double jeopardy; (6) the sentence was disproportionate under *Milbourn*; and (7) the trial court failed to set forth any facts or conclusions of law to support the no-contest plea. The Michigan Court of Appeals treated Petitioner's application as an appeal of right and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Brayboy*, No. 148529 (Mich. Ct. App. Sept. 29, 1992).

The Michigan Supreme Court denied leave to appeal on June 22, 1993, because it was not persuaded to review the issues. The denial was without prejudice to Petitioner's right to seek an evidentiary hearing in the trial court on his claims of ineffective assistance of trial and appellate counsel. *See People v. Brayboy*, 442 Mich. 928; 503 N.W.2d 903 (1993) (table).

Years later, Petitioner filed a motion for relief from judgment in which he complained about his attorneys' representation of him. The trial court denied Petitioner's motion on the basis of Michigan Court Rule 6.508(D).[1] The Michigan Court of Appeals denied leave to appeal

---

[1] Rule 6.508 provides in relevant part:

**(D) Entitlement to Relief.** The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

. . . .

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

because Petitioner failed to establish entitlement to relief under Rule 6.508(D), *see People v. Brayboy*, No. 264951 (Mich. Ct. App. Mar. 23, 2006), and on October 31, 2006, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Brayboy*, 477 Mich. 906; 722 N.W.2d 880 (2006) (table).

### B. The Federal Court Proceedings

Petitioner filed his habeas corpus petition and a motion for equitable tolling of the one-year statute of limitations on March 28, 2007. His *pro se* petition listed the following grounds for relief:

I.     Ineffective assistance of counsel due to trial counsel's failure to pursue an insanity defense.

II.    Petitioner's plea was illusory because the prosecutor promised to recommend a lenient sentence.

III.   Petitioner's plea was involuntary because he was incompetent at the time it was made.

IV.    Petitioner's conviction was barred by double jeopardy because earlier a jury was impaneled and sworn.

V.     Petitioner's sentence was disproportionate in light of *People v. Milbourn*, 435 Mich. 630; 461 NW2d 1 (1990).

VI.    Petitioner's mental retardation, blindness, indigency and illiteracy provided "good cause" for appellant's failure to raise these issues previously.

VII.   [A]ll counsels were ineffective from start of pretrial, and trial readiness, as all performed way below average.

---

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

4

Respondent argued in an answer to the habeas petition filed through counsel that Petitioner's claims were untimely, unexhausted or procedurally defaulted, not cognizable on habeas review, or without merit.  Petitioner subsequently moved to amend his habeas petition to delete claims I, II, IV, and V as unexhausted.  On February 12, 2008, the Court granted Petitioner's motion for equitable tolling and Petitioner's motion to amend his habeas petition to delete claims I, II, IV, and V.  The Court also ordered Respondent to file additional state court records.  Respondent later informed the Court that he has been unable to locate the transcripts for Petitioner's truncated jury trial, plea, sentence, and certain other records.  However, on June 6, 2008, Respondent filed miscellaneous records concerning Petitioner's health, competency to stand trial, and criminal responsibility.

The Court subsequently appointed an attorney for Petitioner and scheduled an evidentiary hearing.  The parties then filed supplemental briefs, and on December 21, 2009, the Court held an evidentiary hearing on Petitioner's claims.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 410-11.

### III. Discussion

#### A. Competency

Petitioner alleges that his no-contest plea was involuntary because he was taking psychotropic drugs at the time and was incompetent to plead no contest.  He testified at the evidentiary hearing that he was taking four or five different medications at the time of his plea and that he could not think properly and did not know what the meaning of a no-contest plea.  He claimed that he thought he was going to trial.  The Michigan Court of Appeals stated on review of this claim that the claim lacked merit because there was absolutely no indication in the plea transcript that Petitioner had been incompetent.

"[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'"  *Indiana v. Edwards*, __ U.S. __, __, 128 S. Ct. 2379, 2383 (2008). The standard

6

for competency is "(1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Id.* (emphasis omitted) (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960) (*per curiam*)). "*Drope* [*v. Missouri,* 420 U.S. 162 (1975)], repeats that standard, stating that it 'has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.'" *Id.* (emphasis omitted). The same standard applies to guilty pleas, *Godinez v. Moran*, 509 U.S. 389, 391 (1993), and, by extension, to no-contest pleas.

The transcript of Petitioner's plea cannot be located, and Petitioner's former attorneys have no recollection of the case. However, the Michigan Court of Appeals had access to the plea transcript, and it found no indication of incompetence in the transcript. That finding of fact is entitled to a presumption of correctness because Petitioner has not rebutted the finding with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). He was found competent to stand trial on September 24, 1986, at which time he understood the charges against him and the maximum penalty he faced for the murder charge. He was able to give a rational and accurate account of the police report in his case, and he could provide a coherent and consistent account of his actions on the day of his arrest. He also could discuss legal strategies, and he felt confident that he could work with his attorneys. He expressed a willingness to return to trial.

Although that interview occurred more than a year before Petitioner's plea, he has not shown that the medication he took in the interim caused him to be confused, unable to understand the proceedings, or incapable of assisting his attorney. In fact, staff at the Forensic

7

Center recommended that Petitioner remain on medication throughout trial, because Petitioner expressed some relief from his anxiety as a result of the medication. Petitioner apparently did not show any ill effects from the drugs at the plea proceeding. His allegation that the drugs made him incompetent is inconsistent with what was apparent to the trial court - that he understood the proceedings

Furthermore, the Court did not find Petitioner credible when he testified at the evidentiary hearing that, despite having been incarcerated for more than twenty years, he still does not understand the meaning of a *nolo contendere* or no-contest plea. Petitioner's lack of credibility on that issue leads the Court to believe he is not credible when he states that he did not understand what was happening at the plea proceeding and that his medication rendered him incompetent to plead no contest.

The state appellate court's implicit finding that Petitioner was competent to plead no contest was an objectively reasonable conclusion, given the prior finding of competence by trained professionals and the state court's access to the transcript of the plea. Petitioner therefore is not entitled to habeas relief on the basis that he was incompetent at the plea proceeding.

**B. Counsel**

Petitioner's only other claim alleges that his prior attorneys deprived him of his constitutional right to effective assistance of counsel. Specifically, Petitioner asserts that: First counsel consulted him only one time in eighteen months; second counsel assaulted him and prejudiced his case by becoming disbarred during the proceedings; third counsel forced him to plead no contest in the absence of a plea agreement and failed to pursue an insanity defense; first

appellate counsel was ineffective on appeal; and second appellate counsel should have requested an evidentiary hearing on Petitioner's claim about trial counsel.

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Petitioner must demonstrate that his attorneys' performances were deficient and that the deficient performances prejudiced the defense. This standard applies to claims about trial and appellate counsel. *Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The prejudice prong of *Strickland* requires a petitioner to demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

## 1.  First to Trial Attorneys and Both Appellate Attorneys

Petitioner's claims about his former attorneys do not satisfy the *Strickland* standard. First counsel may have done little to help Petitioner, but there was no prejudice to Petitioner because his mother subsequently retained second counsel. Although Petitioner faults second counsel for

becoming disbarred, second counsel claimed in a response to a grievance filed against him that he tried to contact witnesses and he filed motions in Petitioner's behalf, but Petitioner had no memory of the crimes and was not particularly cooperative.  Second counsel, moreover, was replaced by third counsel before the charges against Petitioner were resolved.

As for the appellate attorneys, no prejudice resulted from first appellate counsel's withdrawal of representation and failure to perfect an appeal, because the trial court appointed substitute appellate counsel, who raised several nonfrivolous issues on appeal.  Petitioner claims that substitute counsel was ineffective for not seeking an evidentiary hearing on Petitioner's claims about trial counsel, but the lack of an evidentiary hearing in state court likely did not prejudice Petitioner, given the weaknesses in his arguments about trial counsel.

### 2. Third Trial Counsel

Petitioner's strongest claims are those about the attorney who represented him at the please - third trial counsel.  He claims that third counsel should have investigated and pursued an insanity defense and was ineffective for urging him to plead no contest without any reduction in the charges or sentencing agreement.

In guilty plea cases, the "performance" prong of *Strickland* requires showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases.  *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).  The "prejudice" prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  The petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*

10

### a.  Failure to Pursue an Insanity Defense

Petitioner claims that counsel should have investigated and presented a defense of not guilty by reason of insanity.  The Michigan Court of Appeals rejected this claim, because, in its opinion, neither the transcript of the plea proceeding, nor the remainder of the record provided to the court of appeals, supported Petitioner's claim of insanity.

Legal insanity is an affirmative defense "requiring proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality of the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law.'" *People v. Shahideh*, 482 Mich. 1156, __; 758 N.W.2d 536, 542 (2008) (Taylor, C.J., concurring) (quoting Mich. Comp. Laws § 768 .21a), *cert. denied*, __ U.S. __, 129 S. Ct. 2404 (2009).  When determining whether an attorney "adequately investigated his client's defense, the ultimate inquiry is whether the choice not to conduct additional investigation was 'reasonable[ ] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691).  The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."  *Knowles v. Mirzayance*, __ U.S. __, __, 129 S.Ct. 1411, 1420 (2009).

Materials submitted by Respondent on June 6, 2008, reveal that Petitioner was found incompetent to stand trial on July 3, 1986, and admitted to the Center for Forensic Psychiatry on July 26, 1986.  On July 28, 1986, a psychiatrist interviewed Petitioner and determined that, although Petitioner presented himself as somewhat confused and disoriented, his behavior and attitude was "more volitional than the product of mental illness."  A Clinician interviewed

Petitioner on the same day and reported that Petitioner did not exhibit any overt signs of a psychotic illness or an affective disturbance and that her diagnostic impression was malingering.

They both interviewed Petitioner a second time on September 24, 1986.  They stated in their report on the interview that psychological testing administered to Petitioner during his hospitalization "suggested malingering with an impulsive and oppositional nature."  They went on to say that Petitioner had adjusted fairly well during his hospitalization, but that "[h]is style on the unit ha[d] been to switch from one medical or psychological complaint after the other, in an apparent attempt to malinger."  Furthermore, "[t]hroughout his hospitalization he . . . show[ed] no outward evidence of mental illness or suicidal behavior."  It was their opinion that Petitioner did "not display any symptoms of a major mental illness and should be able to fully participate in any subsequent court proceedings" if he so chose.

On April 22, 1987, a different forensic examiner interviewed Petitioner.  Petitioner informed the examiner that he had ingested cocaine, approximately a fifth of vodka, some beer, and Tylenol 4's on the date of the incident.  The examiner noted that drug screening conducted within hours of the offense indicated that Petitioner was mildly intoxicated.  The examiner recognized that, to the extent Petitioner was linking his substance abuse to the crimes, voluntary consumption of alcohol or controlled substances does not render a person criminally insane.[2]  The examiner also stated that neurological screening revealed "no significant neurological deficits which impair cognitive functioning such as perception or planning" and that "[t]esting

---

[2]  *See People v. Caulley*, 197 Mich. App. 177, 187 & 187 n.3; 494 N.W.2d 853, 858 & 859 n.3 (1992)  explaining that a person "who is voluntarily intoxicated does not have grounds for an absolute defense based upon his insanity" unless "the voluntary continued use of mind-altering substances results in a settled condition of insanity before, during, and after the alleged offense."

12

was also negative in terms of findings of psychotic thinking or behavior." The examiner concluded his report by recommending that Petitioner be considered criminally responsible for his conduct on the night of the crimes.

In light of these reports, which indicate that Petitioner was not mentally ill or psychotic and that he might have been malingering or exhibiting selective memory, defense counsel was not ineffective for failing to further investigate or pursue an insanity defense. The defense was not a supported.

The Court notes, moreover, that, even if counsel's performance was deficient as a result of not pursuing an insanity defense, Petitioner would have been hospitalized if he had gone to trial and were found not guilty by reason of insanity. Any chance of getting out of a mental hospital would have been remote. More likely, he would have been found guilty or guilty and mentally ill. Either would result in the same prison time. Thus, the alleged deficiency did not prejudice Petitioner. He has failed to show that, but for counsel's deficient performance, the result of the proceedings would have been different with a probability sufficient to undermine confidence in the outcome. *Davis v. Booker*, __ F.3d __, __, No. 09-1140, 2009 WL 4795326, at *4 (6th Cir. Dec. 15, 2009). Note, there was no deficient performance.

### b. Urging Petitioner to Plead No Contest

According to the Michigan Court of Appeals, no promises, agreements, or recommendations were made in return for Petitioner's no-contest plea. Petitioner contends that counsel was ineffective for urging him to plead no contest as charged.      Respondent argues that this claim is procedurally defaulted because Petitioner raised it for the first time on state collateral review of his convictions and because the State's appellate courts denied leave to

appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). The Court will excuse the alleged procedural default because Petitioner's claim lacks merit, and a federal habeas court need not address a procedural-default issue before deciding against the petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), *cert. denied*, __ U.S. __, 129 S. Ct. 1986 (2009). Review of Petitioner's claim is *de novo* because the state court did not adjudicate the claim on the merits and thus, there is no state court decision to which this Court can defer pursuant to 18 U.S.C. § 2254(d). *Thompson v. Bell*, 580 F.3d 423, 439 (6th Cir. 2009).

Although at first blush it might appear that counsel was ineffective for urging Petitioner to plead guilty to second-degree murder, as charged, the Supreme Court has held that an attorney is not necessarily ineffective for conceding his client's guilt. *See Florida v. Nixon*, 543 U.S. 175 (2004). Instead, the reasonableness of an attorney's performance must be assessed "in accord with the inquiry generally applicable to ineffective-assistance-of-counsel claims: Did counsel's representation 'f[a]ll below an objective standard of reasonableness'?" *Id*. at 178 (quoting *Strickland*, 466 U.S. at 688).

The evidence against Petitioner was substantial (he was observed shooting his unarmed girlfriend three times), and he did not have a strong defense. He testified at the evidentiary hearing that his defense was insanity and diminished capacity. However, he had already been found criminally responsible and sane, and test results indicated that he was not highly intoxicated on the night in question. Therefore, he likely would not have prevailed at trial.

14

Furthermore, the prosecutor who represented the state at the plea proceeding testified at the evidentiary hearing in this Court that a defendant might plead guilty or no contest as charged due to remorse or a desire to avoid a trial.  According to the prosecutor, a defendant also might hope for leniency from the trial court at sentencing if the defendant waived his right to a trial. Because the evidence against Petitioner was substantial and because he was facing a maximum sentence of life imprisonment for the murder if he were convicted at trial, *see* Mich. Comp. Laws § 750.317, it was reasonable trial strategy to recommend that Petitioner plead no contest in hopes of obtaining leniency at sentencing.

The Court notes, moreover, that, in a letter first appellate counsel wrote to counsel at the plea on May 23, 1988, counsel stated that neither he, nor Petitioner had any problems with the way that plea counsel represented Petitioner.  The letter also stated that he had recently received a letter from Petitioner in which Petitioner indicated that he was not interested in trying to withdraw his plea; instead, he was looking for a way to get a reduction in his sentence.

Plea counsel had already been successful in getting the trial court to lower the sentencing guidelines.  The guidelines for the minimum sentence initially were scored at ten years to life, but they were reduced to six to fourteen years at his insistence.  It is unlikely that Petitioner could have negotiated lower sentencing guidelines had he gone to trial and been convicted of second-degree murder.

The Court concludes for all the foregoing reasons that plea counsel was not ineffective for urging Petitioner to plead no contest as charged.  His representation did not fall below an objective standard of reasonableness.

15

## IV.  Conclusion

Petitioner's claims lack merit.  The state courts' rejection of the claims did not result in decisions that were contrary to federal law, an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is **DENIED**.

## V.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail."  *Miller-El*, 537 U.S. at 338.

16

Reasonable jurists could disagree with the Court's resolution of Petitioner's claims. A certificate of appealability, therefore, may issue on Petitioner's claims. The claims "deserve encouragement to proceed further." *Id.* at 327. Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(4)(B).

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  January 20, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 20, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary

17